IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

RONNIE BYRD, JR., )
                                                                        )
    Plaintiff, )
                                                                        )
v. )
                                                                        )    Case No.1:11-cv-0061
LUKE TYSON, et al., )    Judge Trauger/Brown
                                                                        )
    Defendants. )
                                                                        )
                                                                        )

To:    The Honorable Aleta A. Trauger

**REPORT AND RECOMMENDATION**

Presently pending before the Magistrate Judge is Defendants' Motion for Summary Judgment. (Docket Entry 48). Plaintiff has not filed a response. For the reasons set forth below, the Magistrate Judge **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED**.

**I. INTRODUCTION**

Plaintiff Ronnie Byrd Jr., an inmate in Giles County Jail at the time of the complaint, filed this suit on July 29, 2011, pursuant to 42 U.S.C. § 1983. (Docket Entry 1). Plaintiff brings claims against Luke Tyson, Chris Canups, Roy Norman, Bonnie Pinkleton, Tory White, Jessica Strickland, Brandon Ridinger, James Hendrix, Rochelle Derryberry, Gerald Head, Terry Rutherford, David Gallaher, Steve Patterson, Matt Sandrell, Chris Riggs, Robert Steelman, Teresa Mattox, Martha Ayers, and William Luna, all in their official capacities, as well as Giles

1

County Sheriff's Department and Giles County, Tennessee. Plaintiff claims that Defendants violated his rights pursuant to the Eighth Amendment to the Unites States Constitution, and seeks the firing of certain individuals and a settlement from the county.

## II. BACKGROUND

Defendants filed this motion for summary judgment on June 8, 2012. Because Plaintiff did not file a response, the Magistrate Judge adopts Defendants' statement of facts as true. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (finding that, in the absence of a response to a dispositive motion, "a court's reliance on the facts advanced by the movant is proper and sufficient."). The Defendants' statement of facts reads as follows:

> On May 19, 2011, the plaintiff was booked into the Giles County Jail for violation of probation on the underlying convictions of aggravated burglary, aggravated assault, evading arrest, and simple possession. At that time, the plaintiff completed a medical questionnaire in which he was asked numerous questions concerning his health. At that time, he was asked if he had any allergies to any medications, food, and/or fibers. He responded that he was allergic to onions, tomatoes, beans, and pork. The plaintiff never reported an allergy to any fibers. Additionally, Mr. Byrd underwent a screening and a Confidential Inmate Medical History was completed at which time he reported that his usual weight was 211 pounds.
> The Giles County Jail has an electronic grievance system in which inmates enter grievances and requests for medical care through a kiosk located in their pods. Byrd began complaining of health ailments on May 26, 2011, a mere week after his incarceration. On that date, Byrd filed a grievance through the electronic grievance system in which he complained that he was now allergic to orange juice and that this was causing him acid reflux. He additionally complained that the pimento cheese was causing acid reflux as well as constipation. Then on May 29, 2011, Byrd filed another grievance complaining of flu-like symptoms including migraines, chest pain, high fever and dizziness. That same morning, Sgt. Tyson checked on Byrd at approximately 4:48 a.m. Correctional officers checked on Byrd again at 5:58 a.m. and moved him to the booking room for observation at approximately 6:02 a.m. He returned to his cell later that morning at 8:40 a.m. Correctional Officers White and Strickland then checked on him again at approximately 7:40 that evening.
> On May 30, 2011, Byrd was given a physical by Nurse Martha Ayers. Nurse Ayers made a notation that the plaintiff complained of occasional

2

abdominal pain and GERD as well as occasional chest pain. She also administered the standard tuberculosis test that day. During that same visit, Ayers addressed the grievance filed by the plaintiff on May 29, 2011 and prescribed him 25 mg of Benadryl as well as Cimetidine for his acid reflux. She also addressed the grievance, which he had filed on May 26, 2011 by placing him on a bland diet with no orange juice. Later that day, Correctional Officer Riggs checked his temperature and it registered 99.4°. The following day, Byrd was provided with a package of non-aspirin pain reliever.

On June 1, 2011, Transportation Officer Hickman checked on Byrd at approximately 3:52 p.m. and moved Byrd to the booking room shortly thereafter for observation. Correctional Officer White then checked Byrd's blood pressure at approximately 9:48 p.m. He was also given another package of non-aspirin. On June 2, 2011, Cpl. Hendry took Byrd's temperature which read 102°. He was offered a package of non-aspirin pain reliever, which he refused. This was at approximately 8:53 a.m. Corrections Officer Steelman again took his temperature at approximately 10:22 p.m. and it had risen to 103°. The following morning, June 3, 2011, Transportation Officer Govar transported the plaintiff to Hillside Hospital at approximately 9:22 a.m.

Byrd was seen in the emergency room at Hillside Hospital. As part of Mr. Byrd's intake, he was weighed at 205 pounds. Mr. Byrd was diagnosed with vomiting, diarrhea, and electrolyte imbalance and his risk stratification was low. On June 7, 2011, Mr. Byrd's conditions had not improved and he had developed several other issues while in the hospital. The decision was made to transfer Mr. Byrd to Maury Regional Hospital.

On June 15, 2011, Byrd returned to the Giles County Jail from Maury Regional Hospital with a prescription for blood pressure medication and instructions to try and eat. His diagnosis was relayed to Nurse Ayers to have been pneumonia and a virus. Mr. Byrd stated he was not hungry. On June 18, Byrd filed a grievance in which he complained of weight loss. Nurse Ayers saw inmates on June 20, but noted that Byrd was in court that day. On June 21, 2011, Byrd was again transported to Hillside Emergency Room in response to his medical complaints. He saw Dr. Bercu while there and his weight was recorded as 199 pounds. At that time, Bercu recommended that Byrd be offered a daily snack. Byrd accepted this additional sandwich on June 24 (on which date he received two additional sandwiches), 25, 27 and 29. In addition, he was provided with an additional sandwich per day for the entire month of July 2011, with the exception of July 26th. On July 1, 2011, the plaintiff was taken to see Dr. Michael where he was evaluated for hypertension and weight loss. Dr. Michael noted that the plaintiff's weight was normal and was very close to the recommended BMI of 25. However, he did prescribe one extra dish daily for one week.

On July 13, 2011, Byrd began complaining about receiving a wool blanket, claiming that he was allergic to wool and that it made him itch. He filed numerous grievances concerning getting a cotton blanket rather than the standard

issue wool blanket. During prior incarcerations, Mr. Byrd had not reported any allergy to wool and there were no visible signs of any rash during this incarceration. On July 20, Jail Administrator Teresa Mattox responded to his complaints stating that he did not qualify for an alternative blanket and that he had refused numerous offers of a wool blanket. On July 21, 2011, Nurse Ayers saw Byrd at which time she addressed his complaints concerning weight loss and the wool blanket. At that time, Ayers noted that the plaintiff weight 195 pounds and that she saw no evidence of a rash and that there was no documentation of an allergy to wool. Mr. Byrd was transferred to a TDOC facility on August 26, 2011.

(Docket Entry 49) (citations omitted).

Defendants have also filed multiple exhibits relating to the described facts. (Docket Entry 74). The Magistrate Judge has reviewed these documents as well.

### III. LEGAL DISCUSSION

A. <u>Summary Judgment</u>

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In order to survive summary

4

judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the non-moving party fails to do so, then summary judgment, if appropriate, should be granted for the moving party. *Id.*

However, "a party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgment as a matter of law," even if the non-moving party fails to respond. Fed. R. Civ. P. 56(c). The trial court's duty is to "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Guarino*, 980 F.2d at 407. In addition, "reasonable inferences must be considered if apparent from the designated evidence and favorable to the non-moving party." *Id.*

    B.    <u>Giles County Sheriff's Department</u>

A § 1983 suit against a county police department employee in their official capacity is akin to a suit against the county, rather than the police department. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Similarly, a § 1983 suit against a sheriff department is equivalent to a suit against the county itself. *Id.* Thus, the Giles County Sheriff's Department is not a proper

5

defendant in this case, and should be dismissed.

    C.    <u>Municipal Liability</u>

Official capacity suits are merely another way to plead an action against the entity the individual represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). If there is no constitutional injury, then the municipality cannot be held liable even if there is a policy that might have authorized a constitutional injury. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). A local entity can only be held liable under § 1983 if the plaintiff suffers a constitutional injury that was the result of the policy or custom of that entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Plaintiff generally alleges that Giles County denied medical treatment when Plaintiff was sick and failed to provide a cotton blanket despite Plaintiff's allergy to wool. (Docket Entry 1). Plaintiff specifically mentions the lack of treatment on June 3 of 2011. While Plaintiff never states any specific grounds for recovery, the pleading strongly indicates a claim under the Eighth Amendment.

**1. Eighth Amendment Allegations**

Deliberate indifference to an inmate's medical needs can constitute "unnecessary and wanton infliction of pain" that can amount to a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To show a deliberate indifference has amounted to a violation, the plaintiff must prove objective and subjective elements.

To satisfy the objective element, the injury must be sufficiently serious. In the context of "conditions of confinement" cases, only deprivations of essential food, medical care or sanitation can amount to an Eighth Amendment violation. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). The plaintiff can only succeed if specific deprivations denied the plaintiff "the minimal

civilized measure of life's necessities." *Richmond v. Settles*, 450 Fed. Appx. 448, 455 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

A medical need is sufficiently serious to satisfy the objective element when it has been diagnosed by a physician as mandating treatment, or when it is so obvious that a layperson would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). An inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). In *Napier*, a jail denied dialysis treatment an inmate suffering from complete kidney failure. The inmate had told the jail that missing treatment was "no big deal," but once in confinement started calling for his scheduled dialysis. The Court upheld summary judgment for the defendants, as the inmate failed to produce any medical evidence that the delay in dialysis caused a detrimental effect.

To satisfy the subjective element, the plaintiff must show that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Flanory*, 604 F.3d at 253. The plaintiff must show that the defendant knew of and consciously disregarded an excessive risk to inmate health or safety. The official must have "a sufficiently culpable state of mind" in denying medical care. The official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Negligent diagnosis or treatment amounting to medical malpractice does not implicate the Eighth Amendment. *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain . . . ." *Id.* at 104.

Here, Plaintiff has not alleged facts that would amount to deliberate indifference under

7

the Eighth Amendment. First, Plaintiff has not provided any medical evidence that a delay in treatment caused a detrimental effect. Second, the failure to provide a cotton blanket is not a deprivation of essential medical care. Lastly, even if Plaintiff has alleged sufficient facts for these claims, Plaintiff has failed to show that the injury was the result of a policy of the Giles County or the Giles County Jail.

Plaintiff has failed to satisfy either element of deliberate indifference in regard to the medical treatment of his flu-like symptoms. The only notable delay in treatment was between June 2nd and June 4th, 2011, when the Jail had yet to send him to a hospital despite a high fever. First, Plaintiff has failed to produce any medical evidence that any delay in treatment caused a detrimental effect. This alone is enough to defeat the claim on summary judgment. In addition, the Jail was treating Plaintiff at the time with an adjusted diet and painkillers. The Jail also regularly checked up on Plaintiff, placing him under observation on June 1st. Even if Plaintiff had provided medical evidence that the difference in treatment caused a detrimental effect, no evidence indicates that any Jail employee consciously disregarded a substantial risk to his health in providing only the Jail's treatment[1].

The failure to provide a cotton blanket is not a violation of the Eighth Amendment, as the "itching" does not satisfy the objective element of deliberate indifference. A complaint about a blanket causing itching hardly constitutes a problem that a layperson would consider requires a doctor's attention. In addition, Plaintiff has again failed to provide any medical evidence that the

---

[1] While Plaintiff may point to the weight loss from the illness, this in no way implicates the Jail's treatment is the cause of the weight loss or continued illness. In addition, even with the weight loss, Plaintiff's weight was close to the recommended BMI of 25. (Docket Entry 67, p. 2).

blanket, or a lack of a useable blanket, caused any kind of detrimental effect.

Even if either of these incidents had satisfied both elements of a deliberate indifference claim, Plaintiff has not pointed to any policy that might have caused the injury. Since Plaintiff is suing Defendants in their official capacity, Plaintiff must show that Jail policy called for delay in sending Plaintiff to the hospital, or denial of a cotton blanket when an inmate complains of an allergy to the regular one. Plaintiff has mentioned no policy in connection with the incidents.

## IV. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 7th day of August, 2012.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge